UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                                   2:08-cr-94-FtM-99DNF

SAMIR NEL CABRERA

_____

**OPINION AND ORDER**

This matter comes before the Court on remand from the Eleventh Circuit Court of Appeals. Based upon Skilling v. United States, 130 S. Ct. 2896 (2010), the Eleventh Circuit vacated all counts of conviction and remanded the matter to the district court "to consider whether granting the government's request for a new trial on the wire fraud and money laundering charges would violate Cabrera's Fifth Amendment rights." United States v. Cabrera, No. 09-14937, 2011 WL 1057075 at *1 (11th Cir. Mar. 24, 2011). Pursuant to the briefing schedule established by the Court, the government filed its Memorandum (Doc. #215) on April 8, 2011, and defendant filed his Memorandum (Doc. #217) on April 25, 2011. The Court heard oral arguments on May 6, 2011. (Doc. #218.) For the reasons set forth below, the Court concludes that granting the government's request for a new trial on the wire fraud and money laundering charges would violate Cabrera's Fifth Amendment rights.

**I.**

On August 27, 2008, defendant Samir Nel Cabrera (defendant or Cabrera) was named in a twelve-count Superceding Indictment (Doc.

#24). Counts One, Two, Three, Four, Five, and Six charged wire fraud in violation of 18 U.S.C. §§ 1343, 1346, 1349 and 2, alleging that defendant devised "a scheme and artifice to defraud certain persons and entities . . . and to deprive them of the intangible right of honest services, and to obtain monies by means of materially false and fraudulent pretenses, representations, and promises." (Id. at ¶26.) Count Seven charged mail fraud in violation of 18 U.S.C. §§ 1341, 1346, 1349, and 2, incorporating the same scheme to defraud allegations as in the wire fraud counts. Count Eight charged money laundering in violation of 18 U.S.C. §§ 1957 and 2, alleging criminally derived property from wire fraud. Counts Nine, Ten, Eleven, and Twelve charged money laundering in violation of 18 U.S.C. §§ 1957 and 2, alleging criminally derived property from wire fraud and mail fraud. Before the case was submitted to the jury, the government dismissed the mail fraud charge in Count Seven and the mail fraud aspects of the money laundering counts. (Doc. #120, p. 239.)

There were no material objections to the relevant final jury instructions or verdict form utilized by the Court. (Doc. #120, pp. 236-46; Doc. #121, pp. 82-83.) As to the wire fraud counts, the jury was instructed that the scheme to defraud had two objectives, one to defraud another of money and one to defraud another of the intangible right of honest services. (Doc. #121, p. 160.) The "scheme to defraud" component of the wire fraud

elements was defined as "any plan or course of action intended to, one, deceive or cheat a person of ordinary prudence and comprehension out of money by means of false or fraudulent pretenses, representations, or promises; or, two, to deceive or cheat someone of the intangible right to honest services." (Id. at 161.)  The Court further instructed that:

> [t]o deprive another of the intangible right of honest services means to violate, or to cause an agent of another person to violate, the agent's duty to provide honest services to another person or entity.  The government must prove that the defendant owed a fiduciary duty to another person or entity, intended to breach the fiduciary duty, and that the defendant foresaw, or reasonably should have foreseen, that the person or entity to whom the defendant owed the fiduciary duty might suffer an economic harm as a result of that breach.

(Id. at 162.)  Notably, as it turns out, the Court did not limit this component of the wire fraud counts to acts of bribery or kickbacks.  Additionally, the Court instructed the jury that:

> Where a statute specifies several alternative objects of a scheme to defraud, the superseding indictment may allege the objectives in the conjunctive; that is, by using the word "and." However, the applicable statutes in Counts 1 through 6, are worded in the disjunctive; that is, the objectives of the scheme to defraud are separated by the word "or."  So if you find, beyond a reasonable doubt, that any one object of the scheme to defraud occurred, that is sufficient, so long as you agree unanimously as to the particular object involved.

(Id. at 164.)  In explaining the verdict form as to wire fraud, and using Count One as an example, the Court advised the jury:

> Remember, earlier in the instructions, I told you that the scheme to defraud was two objects: One is to defraud of money, and one is to defraud of honest services.

> You may find the defendant not guilty, of course, or you may find him guilty of scheming to defraud of money, or of scheming to defraud of honest services, or both money and honest services. If it's both, you check two boxes for guilty. If it's neither, obviously, you check not guilty.
>
> Your verdicts must be unanimous. What that means is, if you find guilty, if six of you think it's money, and six of you think it's honest services, that's not unanimous. It has to be all of you, with regard to any check you make, as to the guilt, or to not guilty.

(Doc. #121, pp. 172-73.)

As to the money laundering counts, the Court instructed the jury that the fourth element was that "the property was, in fact, derived from wire fraud, as alleged in the superseding indictment; . . ." (Id. at 165.) The only options on the verdict form as to the money laundering counts were "Not Guilty" or "Guilty."

The jury announced an impasse (Doc. #122, p. 6), and the Court gave the jury the modified Allen[1] charge. (Id. at 7-9.) Three and one-half hours later the jury found defendant guilty of all wire fraud counts based upon a scheme to defraud investors of the intangible right to honest services. (Doc. #86; Doc. #122, pp. 9-11.) For example, the Verdict form as to Count One stated:

> 1. As to Count One, which charges that on or about January 27, 2006, Defendant Samir Nel Cabrera committed wire fraud, we the jury unanimously find Defendant Samir Nel Cabrera,
>
> _____  NOT GUILTY

---

[1] Allen v. United States, 164 U.S. 492 (1896).

     _____   GUILTY, scheme to defraud investors of money

     _____   GUILTY, scheme to defraud investors of the intangible right to honest services

The jury checked only the third option on all six wire fraud counts, leaving the other two options blank. The jury also found defendant guilty of all of the money laundering counts, checking the "GUILTY" option for those counts. (Id.)

The Court polled the individual jurors, and each confirmed the verdicts; the jury was then discharged. (Id. at 9-10.) The Court thereafter advised the defendant that "based upon the jury's verdicts, the Court would adjudicate you guilty of Count 1, 2, 3, 4, 5, and 6, of a scheme to defraud investors of the intangible right to honest services, and guilty of Count 8, 9, 10, 11 and 12." (Id. at 13.)

In a Sentencing Memorandum filed prior to the sentencing hearing, the government acknowledged that the jury had not convicted defendant of a scheme to defraud investors of money. (Doc. #134, p. 17.) The government argued, however, that this conduct had been proven by a preponderance of the evidence and was thus relevant conduct under the Sentencing Guidelines. (Id.) The government cited a line of cases dealing with the court's ability to consider acquitted conduct when imposing sentence, including United States v. Watts, 519 U.S. 148, 156 (1997). (Id.) Cabrera

was sentenced to 120 months imprisonment, followed by 60 months of supervised release.[2]

## II.

After defendant was sentenced, the Supreme Court decided Skilling v. United States, 130 S. Ct. 2896 (2010). In Skilling, the Supreme Court held that, properly interpreted, the honest-services provisions of 18 U.S.C. § 1346 criminalizes only conduct involving bribes and kickbacks. Id. at 2931. Skilling was charged with a conspiracy which had three objects – honest services wire fraud, money-or-property wire fraud, and securities fraud. Because only a general verdict was used, i.e., the jury simply found defendant guilty without specifying which object, the Supreme Court found the conviction was "flawed." Id. at 2934 (citing Yates v. United States, 354 U.S. 298, 312 (1957)(finding that constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory)). This "flaw" did not necessarily require reversal of the conviction because it could have been harmless error. Id. at 2934. That issue was left for resolution on remand.[3]

---

[2]After remand from the Eleventh Circuit, the Court granted defendant's renewed motion for release pending appeal. (Doc. #196.)

[3]On remand, the Fifth Circuit found the error harmless, but remanded for re-sentencing. United States v. Skilling, 638 F.3d 480 (5th Cir. 2011).

-6-

Under Skilling it is now clear that the honest services portion of the jury instructions in Cabrera's case was incorrect because it did not limit the jury's consideration to bribes or kickbacks. Thus, the government conceded in the Eleventh Circuit "that the jury instructions given by the district court were erroneous . . ." Cabrera, 2011 WL 1057075 at *1. The government also conceded "that the evidence presented did not involve criminal conduct under 18 U.S.C. § 1346 as interpreted by Skilling. Accordingly, the government concedes in its brief that all counts of conviction should be vacated." Id.

The parties disputed, however, "whether Cabrera can be retried on the wire fraud and money laundering charges under the theory that he defrauded investors in light of the Fifth Amendment's prohibition of Double Jeopardy." Id. The matter was therefore remanded with instructions for "the district court to consider whether granting the government's request for a new trial on the wire fraud and money laundering charges would violate Cabrera's Fifth Amendment rights." Id.

## III.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides in relevant part: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. An acquittal is an absolute bar to a retrial. Burks v. United States, 437 U.S. 1,

16 (1978). "It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." Lockhart v. Nelson, 488 U.S. 33, 38 (1988).

A distinction is made between legal errors in the proceedings and a lack of sufficient evidence to support a conviction. A conviction which is reversed because of legal error during the trial proceedings, such as improper jury instructions, may be retried without violating the Double Jeopardy Clause, but a conviction reversed because of insufficiency of the evidence may not be retried. Burks, 437 U.S. at 15-18. This precludes the government from taking a "second bite at the apple" after an acquittal or after a conviction which has been reversed because of insufficiency of the evidence. Id. at 17. Therefore, a retrial after an acquittal or a reversal based upon the insufficiency of evidence is barred by the Fifth Amendment, while a retrial after reversal for some other legal error is not.

The government advises that it conceded on appeal that the wire fraud guilty verdicts as to honest services fraud could not stand because the indictment did not charge a scheme to defraud based upon bribes or kickbacks, the evidence at trial did not prove

such a scheme, and the jury was not instructed that such proof was necessary. (Doc. #215, pp. 1-2.) While the first and third concession would not have precluded a retrial,[4] the concession of a lack of evidence supporting the honest services theory as confined by Skilling precludes retrial on that theory.[5] Therefore, as it stated during oral argument, the government does not seek to retry Cabrera on the honest services theory of the wire fraud counts.

What the government does seek, however, is to retry Cabrera on the money fraud portion of the wire fraud counts and on the money laundering counts. To do so, the government argues that the jury did not acquit Cabrera on the money wire fraud theory, and therefore he can be retried on that theory as to the wire fraud counts. As to the money laundering counts, the government argues that the jury could have relied on either a valid predicate (money wire fraud) or an invalid one (honest services wire fraud) and therefore retrial is constitutionally permissible. (Doc. #215, p. 2.) The government further argues that at best the verdicts

---

[4]United States v. Bobo, 419 F.3d 1264, 1267 (11th Cir. 2005)("It has long been accepted, for example, that retrial is not barred when a defendant's conviction is vacated on appeal due to an insufficient indictment, . . ."); Burks, 437 U.S. at 15 (incorrect jury instructions do not bar retrial).

[5]Bobo, 419 F.3d at 1268 ("Because it has the effect of an acquittal, a holding that the evidence is insufficient to sustain a conviction is one such jeopardy-terminating event.")(citing Burks, 437 U.S. at 10-11)).

were ambiguous, thereby authorizing retrial without violating the Double Jeopardy Clause.

Cabrera responds that he has already been acquitted of the money wire fraud counts, and cannot be retried on any count without violating the Double Jeopardy Clause.

**A. Wire Fraud Counts**

"Double jeopardy concerns are not implicated unless there has been some jeopardy-terminating event, such as an acquittal." Bobo, 419 F.3d at 1268. It is a fundamental principle, one not challenged by the government, that a person who has been found not guilty by a jury may not thereafter be tried for the same offense without violating the Double Jeopardy Clause. This is because the law "afford[s] absolute finality to a jury's *verdict* of acquittal - no matter how erroneous its decision - . . . ." Burks, 437 U.S. at 16. "When a defendant has been acquitted, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him." Schiro v. Farley, 510 U.S. 222, 230 (1994)(internal quotation and citation omitted).

The government asserts, however, that there has been no such acquittal in this case as to the money wire fraud theory. The government argues that the jury "failed to specify whether Cabrera was guilty or not guilty on those same counts [wire fraud] of executing a 'scheme to defraud investors of money,'" and "had not decided whether Cabrera was guilty or not guilty of money wire

fraud," and that "the verdicts do not demonstrate that the jury acquitted Cabrera on the money wire fraud charges," and that the case should be set for trial "for a jury to decide for the first time these unresolved charges."  (Doc. #215, pp. 1, 2, 6, 11.)

The Court finds that the verdicts described above constituted an acquittal of the wire fraud counts based on the money fraud theory.  In making this determination, the undersigned has the benefit of not only reviewing the transcripts, but of having participated in the original proceedings.  Because defendant has been acquitted of wire fraud based upon the money fraud theory, he may not be retried on any of the wire fraud counts.

Both parties and the Court intended to have verdicts and a verdict form which resolved all theories in all counts.  Although the government now argues that the jury necessarily left some work undone in completing the verdict form as it did, the Court disagrees.  The verdict form was essentially in the format submitted by the government, which was not simply a local nuance. See Black v. United States, 130 S. Ct. 2963, 2967 n.3 (2010)("check all that apply" verdict form proposed by the government).  Nothing in the record suggests that the government contemporaneously believed this would result in some issues being left unresolved by the jury and enable the government to get the proverbial "second bite" if it did not prevail at trial.

Had the government intended such a result, such "sandbagging" would not now be rewarded. The Supreme Court has found that sandbagging, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," may result in the forfeiture of even constitutional rights. Stern v. Marshall, No. 10-179, 2011 WL 2472792 at *13 (U.S. Jun. 23, 2011)(quoting Puckett v. United States, 129 S. Ct. 1423, 1428 (2009)). There would be no reason to allow the government to prevail if it had believed the jury was about to be discharged without completing all of its required functions and yet remained silent.

Not only did everyone intend for the jury verdicts to completely resolve the government's case against Cabrera, but the verdicts did in fact do so. The verdict form was completed by the jury in the only manner possible where it found Cabrera not guilty of one of the two options for wire fraud. While the government poses alternative interpretations of the verdict form now, it was remarkably silent as to these interpretations when it mattered - at the time of the trial. The verdict form and instructions were consistent with those proposed by the government, and the government did not object to the final version of either. The government did not suggest after the jury verdict, including before or after the Court's polling of the jury, that anything had been left undecided by the jury. In its sentencing memorandum, the

government relied upon cases upholding the Court's ability to consider <u>acquitted</u> conduct in its sentencing decision. (<u>See</u> Doc. #120.) Defendant's response reflected the clear understanding of all parties as to the impact of the jury verdict: "While it is correct that there were guilty verdicts returned as to counts 1-6, alleging wire-fraud, Mr. Cabrera was acquitted of the underlying allegations that he schemed to defraud investors of money." (Doc. #145, p. 10.)

Additionally, even if the jury verdicts were ambiguous, the government has not articulated a legitimate basis as to why it should now reap the benefit of such invited ambiguity. As noted above, the instructions and verdict form were not the subject of government objection. The government never suggested any flaw at a point in time when corrective action could have been taken with the jury. The government proceeded on the expressed belief that defendant had been acquitted of the money fraud theory of wire fraud. If the government had believed the jury verdicts did not resolve the entire case, the government was obligated to re-try those counts within seventy (70) days of what it must have considered an implicit declaration of a mistrial, 18 U.S.C. § 3161(e), or within the original time period less excludable periods, 18 U.S.C. § 3161(h). The government failed, however, to say a word to accomplish such a timely retrial. Rather, the

government has simply raised *post hoc* arguments in an attempt to counter the consequences of Skilling.

The Court concludes that the jury's verdicts constituted a finding of acquittal as to the money fraud scheme in Counts One through Six. Alternatively, if these verdicts were ambiguous, the error was invited by the government. United States v. Brannan, 562 F.3d 1300, 1305-06 (11th Cir. 2009). Further, the government has forfeited its ability to now seek retrial based upon its failure to timely assert the claim that the jury had not completed its work by returning the verdicts it did.

Accordingly, the Court finds that granting the government's request for a new trial on the wire fraud charges would violate Cabrera's Fifth Amendment rights.

**B. Money Laundering Counts**

The money laundering counts, unlike the money wire fraud counts, resulted in verdicts of guilt, albeit in a general verdict format. The government argues that a retrial is not precluded by Double Jeopardy because each guilty verdict could have relied upon either a valid predicate (i.e., money wire fraud) or an invalid predicate (i.e., honest services wire fraud). (Doc. #215, p. 2.) Under this scenario, the government asserts, a retrial on the money fraud theory is permissible and would not violate Double Jeopardy. (Doc. #215, p. 11.) Cabrera disagrees, arguing that collateral estoppel principles preclude a retrial. (Doc. #217, p. 14.)

The jury returned general verdicts as to all money laundering counts, i.e., it found defendant "Guilty" without specifying whether the predicate fraud was money wire fraud or honest services wire fraud. It is undisputed that in light of <u>Skilling</u> the honest services theory can no longer support the money laundering counts. Since the general verdicts make it impossible to tell which ground the jury selected, the general verdict was vacated pursuant to <u>Yates</u>. See <u>Yates</u>, 354 U.S. at 312 (a general verdict may be set aside "where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."). As discussed above, because the government conceded the insufficiency of the evidence of the honest services theory, honest services can no longer be the predicate conduct on any retrial.

The Court must determine the disposition of the other predicate conduct for money laundering - money wire fraud. As long as the verdict was supportable on one ground, nothing in the Double Jeopardy provision precludes a retrial on that ground. <u>United States v. Pendergraft</u>, 297 F.3d 1198, 1210 (11th Cir. 2002). Here, the Court found that there was sufficient evidence to allow the jury to convict Cabrera of the money fraud component of both the wire fraud counts and the money laundering counts. (Doc. #121, p. 63.) Reviewing the transcripts again leads the Court to the same finding. "When a defendant testifies, the jury is allowed to

disbelieve him and to infer that the opposite of his testimony is true." Pendergraft, 297 F.3d at 1211. Therefore, the money laundering counts would have been supportable under the money fraud theory.

As the Court found above, however, the jury found Cabrera not guilty of the money fraud theory of the wire fraud counts. Despite these acquittals, the government argues that because there was sufficient evidence to have supported money wire fraud convictions, and the jury has the power to return inconsistent verdicts, a retrial is permissible.

It is well settled that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" because a jury has the unreviewable power to return of verdict of not guilty for impermissible reasons. Harris v. Rivera, 454 U.S. 339, 345 (1981); see also Yeager v. United States, 129 S. Ct. 2360, 2362 (2009); United States v. Powell, 469 U.S. 57, 68 (1984); Dunn v. United States, 284 U.S. 390, 399 (1932). Thus, the jury in this case could have found Cabrera not guilty of the wire fraud counts and guilty of the money laundering counts, even though such verdicts may be internally inconsistent, and the verdicts would have been unreviewable. Powell, 469 U.S. at 67-68; United States v. Schlaen, 300 F.3d 1313, 1317 (11th Cir. 2002)("Even where conviction on one count and acquittal on another count is a logical impossibility,

the conviction will stand, unless it was otherwise obtained in error.").

While inconsistency would not bar retrial, principles of collateral estoppel may. In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court "held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." Yeager, 129 S. Ct. at 2366. To decipher what a jury has necessarily decided, a court should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. at 444 (internal quotation marks omitted). The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Id. The analysis of collateral estoppel based on double jeopardy has two steps: "First, courts must examine the verdict and the record to see what facts, if any, were necessarily determined in the acquittal at the first trial. [ ] Second, the court must determine whether the previously determined facts constituted an essential element of the second offense." United States v. Ohayon, 483 F.3d 1281, 1286 (11th Cir. 2007)(internal quotations and citations omitted).

At trial, the government presented evidence that Cabrera intentionally did not disclose the property flips and kicker fees. The government argued that this intentional non-disclosure defrauded the investors of their money and honest services. (See Doc. #121, p. 99.) Cabrera argued that he did not intend for the investors to lose money and that he relied on others to ensure the disclosures were made. Further, while he admitted he should have been more proactive in telling the investors the challenges the projects faced, he asserted the investors lost money because of the commercial real estate market collapse. (See id. at 129-130.) After initial deliberations, a modified Allen Charge, and another three and one-half hours of deliberation, the jury returned with its verdicts. The Court finds that the jury's verdicts necessarily determined that Cabrera did not intend to defraud his investors of money, i.e., that he did not intend to cause them financial loss.

The government argues that even if the jury did acquit Cabrera of the money wire fraud, collateral estoppel would not apply because guilt of a substantive offense is not an element of a money laundering offenses. (Doc. #215, p. 16.) The Court agrees that in general a defendant does not need to be convicted of the predicate unlawful activity in order to be convicted of money laundering. See United States v. Magluta, 418 F.3d 1166, 1174 (11th Cir. 2005). However, with regards to the estoppel inquiry "the question was whether a fact, not a legal element, was shared by the offenses in

question." Ohayon, 483 F.3d at 1293. In Magluta, the government did not have to prove that the defendant committed the predicate felony drug offenses, because "[a]s far as the money laundering statute is concerned, laundering someone else's illegal proceeds is just as bad as laundering your own- . . ." Magluta, 418 F.3d at 1174.

The instant case is distinguishable from Magluta. According to the Superceding Indictment and the evidence and argument presented at trial, the government's theory was not that Cabrera was laundering someone else's illegal proceeds, but rather that Cabrera conducted financial transactions involving the proceeds of the non-disclosed kicker fees that he obtained through either money or honest services fraud. (See Doc. #121, pp. 97-106.) The money fraud theory is the only valid predicate for the money laundering charges, and whether Cabrera intended to defraud the investors of money is an essential element of both the money wire fraud counts and the money laundering counts. Since the Court has found that the jury acquitted Cabrera of the money fraud counts, collateral estoppel precludes the government from relitigating that issue.

Therefore, the Court finds that granting the government's request for a new trial on the money laundering charges would violate Cabrera's Fifth Amendment rights.

Accordingly, it is now

**ORDERED:**

1. The government's request for a new trial on the wire fraud and money laundering charges is **DENIED** because such a retrial would violate Cabrera's Fifth Amendment rights.

2. The Orders Setting Conditions of Release (Doc. #199) and Modifying Conditions of Release (Doc. #209) as to Samir Nel Cabrera are **VACATED**.

3. The Clerk of Court shall close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of July, 2011.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record
U.S. Probation
DCCD